UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XPO LOGISTICS, INC., a Delaware corporation, and EXPRESS-1, INC., a Michigan corporation, </br></br>    Plaintiffs, </br></br>v. </br></br>BRANDY GALLATIN, an individual, and TAYLOR MADE EXPRESS, INC., a Wisconsin corporation, </br></br>    Defendants. | No. 13 C 1163 </br></br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, XPO Logistics, Inc. ("XPO") and its wholly-owned subsidiary Express-1, Inc. ("Express-1"), filed an amended complaint against defendants Brandy Gallatin, a former Express-1 employee, and Taylor Made Express, Inc. ("TME"), her current employer. Plaintiffs allege that Gallatin is in breach of the non-competition, non-solicitation, and confidentiality provisions of her contract with XPO and that TME has tortiously interfered with XPO's contract with Gallatin and plaintiffs' contractual relations and business relationships with several former employees and plaintiffs' customers; aided and abetted or otherwise induced breaches of the duty of loyalty; violated the Michigan Uniform Trade Secrets Act; and engaged in unfair competition.[1] Gallatin filed a counterclaim against XPO alleging breach of contract. TME filed a counterclaim against plaintiffs alleging tortious interference with TME's employment relationship with Gallatin. Before the court is TME's motion to dismiss counts V-X of

---

[1] The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(3), (6), and (7), as well as XPO's motion to dismiss TME's counterclaim. For the following reasons, TME's motion [#38] is denied, and XPO's motion [#36] is denied.

## BACKGROUND[2]

XPO and its wholly-owned subsidiary Express-1 provide logistic services throughout the United States. XPO is based in Connecticut, and Express-1 is based in Michigan. They operate primarily in three areas: expedited transportation, freight forwarding, and freight brokerage. TME is an XPO competitor based in Milwaukee, Wisconsin servicing the contiguous United States. TME has also provided services to plaintiffs as a vendor. According to its website, TME has two facilities in Illinois, in Elk Grove Village and East Peoria.

Since October 2012, TME has hired several former XPO and Express-1 employees. On October 26, 2012, Brandy Gallatin gave notice of her resignation from Express-1, where she had worked as part of its sales team servicing Illinois and other areas since April 2009. As a condition of her employment, she had signed an agreement containing non-competition, non-solicitation, and confidentiality provisions that survived the termination of her employment. On October 29, 2012, Gallatin began working for TME in a similar position, covering a sales territory including Illinois and Wisconsin and soliciting the same customers for TME as she had for Express-1. Gallatin did not return her Express-1 laptop and other materials to Express-1 until several weeks after she resigned and began working at TME.

---

[2] The following facts are taken from the complaint and attached documents and are presumed true for the purpose of resolving the present motion. *See Barnes* v. *Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

On October 31, 2012, almost immediately after Gallatin's resignation from Express-1, XPO sent both TME and Gallatin letters.[3] The letter directed to TME stated that Gallatin was subject to a non-competition, non-solicitation, and confidentiality agreement, which XPO believed Gallatin was violating by working for TME. XPO further stated that it would enforce its rights against both Gallatin and XPO if no adequate explanation was provided as to how Gallatin was not in violation of her agreement. XPO received no response from either party.

TME also hired three former Express-1 salespeople in January 2013. Ralf Mojsiejenko, who had worked for Express-1 since September 1992 covering southwest Michigan, was terminated by Express-1 and thereafter hired by TME to service the same territory. Brad Kelley, who had worked for Express-1 since March 1990, was also hired by TME to service the same territory he had covered for Express-1, Kentucky, southern Indiana, and southern Ohio. Tom Turner was terminated by Express-1, where he had worked since December 2003 covering Virginia, North Carolina, and South Carolina, and was subsequently hired by TME to service the same territory. Like Gallatin, Mojsiejenko and Turner had employment agreements that prohibited them from disclosing plaintiffs' confidential information and competing with plaintiffs' business; Kelley did not.

---

[3] The court may consider the contents of the October 31, 2012 letter to TME, as it is referenced in TME's counterclaim and central to TME's counterclaim. *188 LLC* v. *Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Where the allegations of the counterclaim contradict the October 31, 2012 letter, the October 31, 2012 letter prevails. *See N. Indiana Gun & Outdoor Shows, Inc.* v. *City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("[W]hen a written instrument contradicts the allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

TME's hiring of former Express-1 employees continued in March 2013, when Sarah Fitzpatrick and Jamie Demitruk began working at TME on its operations team. Both had worked out of Express-1's headquarters in Michigan. Fitzpatrick had worked there since September 2010 and was the National Accounts Manager at the time of her resignation. She was subject to an employment agreement that contained non-competition, non-solicitation, and confidentiality provisions. Demitruk was Express-1's Carrier Relations Manager at the time of her resignation, having worked there since September 2006. Plaintiffs have not produced any agreement containing post-employment restrictions to which Demitruk was a party. At the time of their resignation from Express-1, Fitzpatrick and Demitruk provided two-weeks notice but then refused to continue working there allegedly at the advice of TME's legal counsel. They began working for TME the following business day.

## ANALYSIS

### I. TME's Motion to Dismiss

#### A. Rule 12(b)(7)

The court conducts a two-step analysis in determining whether a complaint must be dismissed for failure to join a party as required by Rule 19. First, the court determines whether the party is a "required" party under Rule 19(a). *Askew* v. *Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009). Rule 19(a) provides that an absent party "must" be joined if joinder is feasible and (1) the court cannot accord complete relief among the existing parties in the party's absence, (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired, or (3) an existing party would be subject to a substantial risk of multiple or

4

inconsistent obligations if the absent party is not joined. Fed. R. Civ. P. 19(a)(1). Second, if the court determines that the party meets the criteria set forth in Rule 19(a)(1) but that joinder is not feasible, it must consider whether, under Rule 19(b), "equity and good conscience" require that the litigation should proceed without the absent party. *Davis Cos.* v. *Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citing *Thomas* v. *United States*, 189 F.3d 662, 667 (7th Cir. 1999)); *see also Askew*, 568 F.3d at 635. The court will consider the prejudice to the existing parties, the adequacy of a judgment that would be rendered without the absent party, and whether the plaintiff would have an adequate remedy if the action were dismissed. Fed. R. Civ. P. 19(b). "If there is no way to structure a judgment in the absence of the party that will protect both the party's rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under Federal Rule of Civil Procedure 12(b)(7)." *Davis Cos.*, 268 F.3d at 481 (quoting *Thomas*, 189 F.3d at 667). The moving party has the burden of showing failure to join a required and indispensable party. *See, e.g.*, *Rotec Indus., Inc.* v. *Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006); *Hous. Auth. Risk Retention Grp., Inc.* v. *Chicago Hous. Auth.*, No. 02 C 4474, 2003 WL 22299353, at *1 (N.D. Ill. Oct. 6, 2003).

TME argues that counts V, VII, and VIII of plaintiffs' amended complaint should be dismissed for failure to join necessary parties, the former Express-1 employees not named in the complaint. Count V is for TME's alleged tortious interference with plaintiffs' contractual relations with Mojsiejenko, Turner, and Fitzpatrick, who all are subject to post-employment restrictions. Count VII alleges that TME interfered with plaintiffs' business relationships and/or expectancy with their customers by, among other things, inducing Express-1's former employees to breach their post-employment obligations to plaintiffs, solicit plaintiffs' customers, and disclose plaintiffs' confidential information. Count VIII alleges that TME aided and abetted or induced Fitzpatrick and Demitruk to breach their duty of loyalty to Express-1 by counseling them to refuse to work during the two-week notice period. Plaintiffs seek, among other things, to enjoin TME from encouraging or inducing any current or former Express-1 employee to breach their post-employment contractual obligations to plaintiffs, from directly or indirectly soliciting plaintiffs' customers through the six former Express-1 employees, from soliciting, recruiting, or hiring any of plaintiffs' employees, and from aiding or abetting the breach of any duty of loyalty owed to plaintiffs by their employees.

TME focuses on the second step under Rule 19(b), making only a cursory argument that, without joining the absent former Express-1 employees to this action, both it and the former Express-1 employees would potentially be subject to inconsistent judgments and the former Express-1 employees would be unable to argue the enforceability of their contracts with Express-1. But before proceeding to whether the absent parties are indispensable, the court must find them to be necessary parties under Rule 19(a). Fed. R. Civ. P. 19(a)–(b). Although the

6

existence of a valid and enforceable agreement between Express-1 and its former employees is a required element of plaintiffs' tortious interference with contract claim, this alone does not make the former employees necessary parties. *See Salton, Inc.* v. *Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 880 (7th Cir. 2004) ("Just as in the closely related case of joint tortfeasors, there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract."); *TABFG, LLC* v. *Pfeil*, No. 08 C 6979, 2009 WL 1209019, at *3 (N.D. Ill. May 1, 2009) ("Although defendant is correct that to prevail on a tortious interference with contract claim, plaintiff must establish that the joint venture breached the joint venture agreement by failing to properly distribute the profits, that does not make [the joint venture members] necessary parties."). Similarly, the court need not have Fitzpatrick and Demitruk before it to adjudicate whether TME aided or abetted their alleged breach of the duty of loyalty.

Plaintiffs further argue that this case is similar to *CDW, LLC* v. *Netech Corp.*, 722 F. Supp. 2d 1052 (S.D. Ind. 2010), where the court issued a preliminary injunction against the defendant based on claims of unfair competition and violation of trade secret laws, among others, despite the fact that plaintiff had parallel proceedings against certain of its former employees proceeding in another jurisdiction. The court there specifically stated in the injunction order that nothing in its injunction would impact or impair the rights of the parties in the parallel proceeding. *Id.* at 1067. Although plaintiffs assert that this case is like *CDW* because their action here will not interfere with any other proceedings related to former Express-1 employees and no relief is sought here against those individuals, that ignores the requested

7

relief that TME be enjoined from soliciting plaintiffs' customers through any former Express-1 employee. Such an injunction could have an effect on the absent former Express-1 employees and impede their ability to protect their interests. *See Cognis Corp.* v. *CHEMCENTRAL Corp.*, 430 F. Supp. 2d 806, 809–10 (N.D. Ill. 2006) (where plaintiff sought to enjoin defendant from distributing product manufactured by third party and to enjoin persons acting with defendant, third party was necessary party because "relief sought could impede [third party's] ability to distribute its competing product and protect its interests," and third party was already party to litigation with plaintiff in another forum and thus could be subject to multiple or inconsistent judgments if not joined in case). Were plaintiffs only seeking monetary damages or relief that would not interfere with the former employees' relationship with defendants, the result might be different. *Cf. NGV Gaming, Ltd.* v. *Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1068–69 (N.D. Cal. 2005) (tribe not a necessary party where plaintiff was seeking monetary damages, not to enforce terms of contract with tribe or to interfere with tribe's ongoing relationship with defendants and any finding against defendants could not serve as basis for claim against tribe); *Bral Corp.* v. *CMN Components, Inc.*, No. 07 C 7029, 2008 WL 2062494, at *3 (N.D. Ill. May 13, 2008) (third party not a necessary party where it indicated no interest in defending against claim that it had breached agreement and "any judgment plaintiff receives against defendant in the instant case [could not] subject defendant (or [the third party]) to a substantial risk of multiple [or] inconsistent obligations, because [third party] would not be bound by such a judgment"). But here, if one court found the agreements enforceable and the other not, the absent parties could both be allowed to solicit and be prohibited from soliciting

plaintiffs' former customers on behalf of TME. This makes them necessary parties. *See Cognis Corp.*, 430 F. Supp. 2d at 809–10.

The former employees, however, are not subject to personal jurisdiction in this district, and thus, using the factors listed in Rule 19(b), the court must determine whether the action should proceed in their absence. If an injunction was entered prohibiting TME from soliciting plaintiffs' customers through the former Express-1 employees, those employees would be prejudiced. *See id.* at 810. But this potential prejudice and the need to include the absent employees disappears when considered against TME's representation in its reply that the absent former Express-1 employees were all terminated by TME on April 30, 2013. Any relief awarded here regarding their future actions as TME employees would not have any effect on them nor would they be bound by a finding that their post-employment restrictions are valid and enforceable. Further, any remaining potential prejudice could be lessened or avoided by tailoring the injunctive relief, if any is warranted, to protect these parties' interests. *See id.* Thus, the absent former Express-1 employees are not indispensable parties and counts V, VII, and VIII need not be dismissed on this ground.

**B.     Rule 12(b)(3)**

In ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *Citadel Grp. Ltd.* v. *Wash. Reg'l Med. Ctr.*, No. 07–CV–1394, 2008 WL 5423553, at *2 (N.D. Ill. Dec. 29, 2008) (citing *Interleave Aviation Investors II (Aloha) LLC* v. *Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003)). The plaintiff bears the burden of establishing proper venue.

9

*Id.* The court must also "resolve any factual conflicts in the parties' submissions in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor." *Id.*

TME contends that venue is proper only where the claim arose from 28 U.S.C. § 1391(b)(2). It argues that venue is improper as to any claims arising out of the hiring of the former Express-1 employees who are not residents of Illinois, for these claims arose in the states where these employees live and work.[4] TME has submitted an affidavit from Michael Salas, a TME employee who was involved in the hiring of the former Express-1 employees, averring that all former Express-1 employees but Gallatin live and work outside of Illinois.

XPO does not dispute that Gallatin is the only former Express-1 employee living and working in Illinois but rather maintains that venue is proper on the challenged claims because TME is subject to personal jurisdiction here and thus is deemed a resident of this district. *See* 28 U.S.C. § 1391(c)(2) (corporation is deemed a resident of any judicial district in which it is subject to the court's personal jurisdiction for that action). Residence is another basis for establishing proper venue. 28 U.S.C. § 1391(b)(1). TME replies that it is only subject to personal jurisdiction in Illinois for those claims regarding Gallatin. But TME did not seek dismissal of any counts based on lack of personal jurisdiction in its initial motion and thus any challenge on that basis is waived. *See Dexia Credit Local* v. *Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). Because venue is

---

[4] The specific counts challenged on this basis are counts V, VII, VIII, and IX.

proper in a district in which the defendant resides and TME is deemed a resident of Illinois for purposes of the challenged claims, XPO's claims are properly venued in this district.

C.   Rule 12(b)(6)[5]

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*,

---

[5] The parties have not engaged in a choice of law analysis nor have the parties identified any differences between Illinois law and any other state law that would potentially apply to plaintiffs' claims at issue here. The parties have briefed the issues using Illinois law, although plaintiffs have also cited to Indiana and Michigan law. Federal courts sitting in diversity apply the choice of law rules of the forum state. *Hinc* v. *Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Under Illinois law, a choice of law analysis is only required if there is a conflict of laws and the difference will affect the outcome of the case. *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 899, 227 Ill. 2d 147, 316 Ill. Dec. 505 (2007). Because the parties have not raised the choice of law issue and plaintiffs' citations to Indiana and Michigan law are in accord with Illinois law on those points, the court will apply Illinois law in addressing the parties' motions to dismiss. *See Camp* v. *TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (when the parties fail to raise a choice of law issue, a court sitting in diversity applies the substantive law of the state in which it sits); *Protective Ins. Co.* v. *Montgomery Tank Lines, Inc.*, No. 89 C 2793, 1989 WL 152527, at *2 (N.D. Ill. Dec. 8, 1989) ("A court, however, may not raise a choice of law question *sua sponte*; for choice of law to even be considered, one of the parties must actually raise and argue a potential conflict between the forum's law and the foreign entity's law.").

550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010). Rather, it is the facts that count.

### 1. Tortious Interference with Express-1's Business Relationships with Gallatin, Fitzpatrick, and Demitruk (Count VI)[6]

TME argues that count VI should be dismissed because Express-1's requested relief—that TME be enjoined from inducing Express-1's employees to join TME—is improper. TME claims that as a competitor of Express-1, it is privileged to induce the termination of an at-will contract. *See A-Abart Elec. Supply, Inc.* v. *Emerson Elec. Co.*, 956 F.2d 1399, 1404–05 (7th Cir. 1992); *Dames & Moore* v. *Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 826 (N.D. Ill. 1998) ("There is no question that a corporation may generally compete for the at-will employees of a rival."). The competitor's privilege, however, is not available to a party that has behaved unfairly or used wrongful means. *See A-Abart*, 956 F.2d at 1404–05 (competitor's privilege does not apply where "circumstances indicate unfair competition, that is, an unprivileged interference with prospective advantage" (quoting *Fishman* v. *Estate of Wirtz*, 807 F.2d 520, 546 (7th Cir. 1987))); *see also Speakers of Sport, Inc.* v. *ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) ("[T]he tort of interference with business relationships should be confined to cases in which the defendant employed unlawful means to stiff a competitor . . . ."); *Dames & Moore*, 21 F. Supp. 2d at 826 ("[I]n situations where, as alleged here, that competition involves the use of wrongful

---

[6] Express-1's claim against TME for tortious interference with contract may be more appropriately characterized as an action for tortious interference with prospective economic advantage if the former employees were at will employees. *See Buckley* v. *Peak6 Invs., LP*, 827 F. Supp. 2d 846, 852 (N.D. Ill. 2001).

means by the defendant corporation, a plaintiff can state a cause of action against the defendant for tortious interference with prospective economic advantage."). The competitor's privilege is an affirmative defense, *see Gen. Motors Corp.* v. *Illinois Motor Vehicle Review Bd.*, 862 N.E.2d 209, 220, 224 Ill. 2d 1, 308 Ill. Dec. 611 (2007), and thus Express-1 need not plead around it to survive a motion to dismiss.

Here, Express-1 has alleged that TME engaged in a concerted raid of its employees, including Fitzpatrick and Demitruk who were "key management-level operations employees," Am. Compl. ¶ 4, and encouraged Fitzpatrick and Demitruk not to honor the two-week notice they provided Express-1 and instead begin work immediately with TME, *id.* ¶ 50. Express-1 describes TME's actions as "wrongful" and "unlawful," taken to "exploit Plaintiffs' confidential, proprietary, and highly sensitive business information at Plaintiffs' expense." *Id.* ¶ 253. Although TME contests that any actions it took were wrongful, this is a question of fact that cannot be resolved on a motion to dismiss. *See Ken-Pin, Inc.* v. *Vantage Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *8 (N.D. Ill. Jan. 20, 2004) (refusing to dismiss tortious interference claim based on competitor's privilege where question of fact existed regarding whether alleged actions were wrongful); *Lawson Prods., Inc.* v. *Chromate Indus. Corp.*, 158 F. Supp. 2d 860, 866 (N.D. Ill. 2001) (allegations that defendant used wrongfully obtained confidential information and made misrepresentations to salespeople about their confidentiality obligations to former employers "arguably demonstrate[ ] bad faith"); *Labor Ready, Inc.* v. *Williams Staffing, LLC*, 149 F. Supp. 2d 398, 411 (N.D. Ill. 2001) (allegations that defendant attempted to steal plaintiff's customer files and benefit from plaintiff's other confidential

information sufficient to survive motion to dismiss based on competitor's privilege). Thus, count VI will not be dismissed.

### 2. Tortious Interference with Plaintiffs' Business Relationships with their Customers (Count VII)

TME also challenges plaintiffs' claim that it tortiously interfered with plaintiffs' relationships with their customers, arguing that the former Express-1 employees who are not subject to a covenant not to compete cannot be prohibited from soliciting plaintiffs' customers. But plaintiffs' claim does not depend solely on the breach of post-employment contractual obligations; it also alleges that the former Express-1 employees have been induced to disclose plaintiffs' confidential information in order to solicit plaintiffs' customers for TME. *See* Am. Compl. ¶¶ 225–27. This allegation does not require the existence of a valid non-compete or confidentiality provision, for the former Express-1 employees had a fiduciary duty to protect plaintiffs' trade secrets and confidential information. *Dames & Moore*, 21 F. Supp. 2d at 823. But, at least under Illinois law, for those former Express-1 employees without valid post-employment restrictions, this duty ended when their employment with plaintiffs ceased. *Id.* The complaint does not specify when the alleged disclosure (or the inducement of the disclosure) of confidential information occurred. Thus at this stage the court will allow plaintiffs' claim to proceed even as it relates to those former employees not bound by any post-employment restrictions. Plaintiffs, however, will be unable to obtain relief for any inducement of the disclosure of confidential information by employees not bound by post-employment restrictions after they left Express-1's employment. *See Riddell, Inc.* v. *Monica*, No. 03 C 3309, 2003 WL

21799935, at *5 (N.D. Ill. July 25, 2003). The appropriate relief, if any, will be resolved at a later stage of the litigation.

### 3. Unfair Competition (Count X)

Finally, TME argues that plaintiffs' unfair competition claim should be dismissed because it is an attempt to create a new cause of action. Unfair competition, however, is an established tort under Illinois law encompassing a "broad spectrum of law" including claims for alleged interference with third party relations. *See Zenith Elec. Corp.* v. *Exzec, Inc.*, No. 93 C 5041, 1997 WL 223067, at *6 (N.D. Ill. Mar. 27, 1997). Plaintiffs may plead both tortious interference with prospective economic advantage and unfair competition. *Gorgonz Grp., Inc.* v. *Gray Matter Holdings, LLC*, No. 00 C 2992, 2001 WL 103406, at *4 (N.D. Ill. Jan. 30, 2001). Because the court has already found that plaintiffs have adequately alleged a claim for tortious interference with prospective economic advantage, the court will not dismiss plaintiffs' unfair competition claim at this stage.

## II. XPO's Motion to Dismiss TME's Counterclaim

In its counterclaim, TME alleges that XPO tortiously interfered with TME's employment relationship with Gallatin by sending TME a letter on October 31, 2012 "demanding that TME terminate Ms. Gallatin's employment because any employment with a direct competitor 'violated the promises she made' in the non-compete."[7] TME Answer & Counterclaim ¶ 137.

---

[7] As noted in relation to Express-1's claim against TME for tortious interference with contract, this claim is more appropriately characterized as an action for tortious interference with prospective economic advantage if Gallatin's employment agreement is terminable at will. *See Buckley*, 827 F. Supp. 2d at 852.

15

TME further alleges that XPO had no basis for making such a demand, as Gallatin's employment restrictions are unenforceable. XPO argues that the October 31, 2012 did not demand that TME terminate Gallatin's employment but rather only asked for an explanation regarding Gallatin's hiring and employment in an attempt to avoid litigation. Because there was no demanded termination, XPO contends there could be no tortious interference. XPO's argument, however, asks the court to ignore the subtext of its October 31, 2012 letter. Although the letter does not use the words "demand" or "terminate," the letter as a whole can reasonably be read to demand that TME terminate Gallatin's employment or else face a lawsuit. Because all reasonable inferences are to be drawn in TME's favor in deciding XPO's motion to dismiss, *see Dixon*, 291 F.3d at 486, the court will not dismiss TME's counterclaim on this ground.

In its reply, XPO sets forth additional reasons why TME's counterclaim should be dismissed, arguing that XPO's statements are privileged and that TME has failed to state a claim because Gallatin continues working for TME and thus no breach has occurred. XPO attempts to couch these arguments as invited by TME's response to XPO's motion to dismiss, but they are instead new arguments raised for the first time in reply. Because these arguments should have been raised in XPO's initial brief in support of its motion to dismiss, the court will not consider them. *See, e.g.*, *Wright* v. *United States*, 139 F.3d 551, 553 (7th Cir. 1998) (arguments in support of a motion that are raised for the first time in a reply brief are waived because "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues"). The waived arguments may have merit, however, and XPO is not precluded from raising them at the appropriate time on a motion for summary judgment.

**ORDER**

TME's motion to dismiss [#38] is denied, and XPO's motion to dismiss [#36] is denied. TME has until August 14, 2013 to answer the amended complaint. XPO has until August 14, 2013 to answer TME's counterclaim. This case will be called for a status hearing on September 12, 2013. The parties are encouraged to attempt to reach a resolution of this case prior to that date.

Dated: July 24, 2013                                    ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

17